1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   SOUTHERN DISTRICT OF CALIFORNIA
10
11   STEPHEN TONEY,                    Case No.:  3:18-CV-2786-WQH-KSC
     BOP #68132298,
12                                     **ORDER:**
                           Plaintiff,
13                                     **(1) GRANTING DEFENDANT**
              vs.                      **WILLIAMS' MOTION TO DISMISS**
14                                     **PLAINTIFF'S SECOND AMENDED**
15                                     **COMPLAINT [ECF No. 56];**
     L. WILLIAMS II,
16                                     **(2) DENYING AS MOOT**
                           Defendant.  **PLAINTIFF'S REQUEST FOR**
17                                     **ENTRY OF DEFAULT [ECF No. 47,**
18                                     **at 28-29];**
19
20                                     **(3) DENYING AS MOOT**
21                                     **PLAINTIFF'S SECOND MOTION**
                                       **FOR APPOINTMENT OF COUNSEL**
22                                     **[ECF No. 47, at 26-27]**
23
24        Stephen Toney, ("Plaintiff"), currently housed at the Western Region Detention
25   Facility in San Diego, California, is proceeding pro se and in forma pauperis in this civil
26   rights action which the Court has previously construed as arising under *Bivens v. Six*
27   *Unknown Named Agents*, 403 U.S. 399 (1971).
28

                                        1

Currently before this Court is Defendant Williams' Motion to Dismiss Plaintiff's Second Amended Complaint, (ECF No. 47, SAC).  (*See* ECF No. 56.)  Plaintiff has filed an Opposition and Williams has filed a Reply.  (ECF Nos. 58, 59.)  Attached to Plaintiff's Second Amended Complaint is a Second Motion for Appointment of Counsel.  (*See* SAC at 26-27).  Also attached to the Second Amended Complaint are two documents Plaintiff submitted apparently in response to an order to show cause issued by the Court in its order on a prior motion to dismiss, (*see* ECF No. 46, at 15), directing Plaintiff to address the apparent failure to serve two John Doe defendants (the "Doe Defendants") named in Plaintiff's First Amended Complaint.  Plaintiff describes the first document as a "Declaration in Support of Proper Served Amended Complaint on the two Doe Defendants," (*see* SAC at 16), and the second as a "Declaration for Entry of Default" against the two Doe Defendants.  (*See id.* at 28-29).

Having carefully considered Defendant Williams' Motion, Plaintiff's Second Amended Complaint, and his Opposition, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint and **DISMISSES** the Second Amended Complaint without further leave to amend.  The Court further **DENIES** as moot Plaintiff's Motion for Appointment of Counsel and Plaintiff's Request for Entry of Default against the Doe Defendants.

## I.   Plaintiff's Allegations

In 2018, while Plaintiff was a pretrial detainee housed at the Metropolitan Correctional Center ("MCC"), he began experiencing symptoms "known to be caused by Hepatitis C" "unlike []ever before."  (*See* SAC at 4.)  Plaintiff requested treatment for his symptoms, which included pain in his "liver areas; [his] lower abdomen and lower back, in [his] gro[i]n, [and his] testicle[s] . . . ."  (*See id.*)  After two doctors informed him that "BOP does not approve Hepatitis C treatment for detainees in pre-trial status," Plaintiff filed an administrative grievance requesting care.  (*See id.*)

Plaintiff's grievance was forwarded to Defendant Williams, the Warden of the MCC.  (*See id.*)  Williams, who Plaintiff describes as a "non-medical official making medical

treatment" decisions, (*see id.* at 5), allegedly denied Plaintiff's grievance, stating among other things that Plaintiff had not provided medical records substantiating his claim that he had Hepatitis C. (*Id.* at 4; *see also id.* at 20 (attaching grievance decision stating that Plaintiff "provided no previous medical records to MCC San Diego").) According to Plaintiff, this response "appeared . . . to be another way to deny [him] Hepatitis C treatment," even though Plaintiff was in custody "well over the time it take[s] to receive a complete round of treatment . . . ." (*Id.*) Plaintiff further alleges that in the decision denying Plaintiff's grievance Williams falsely stated that Plaintiff "never complained of any symptom . . . ." (*Id.* at 6; *see also id.* at 20 (attaching Williams' decision stating in relevant part "[Plaintiff] also stated that [he] ha[s] no active symptoms" of Hepatitis C).) In fact, Plaintiff alleges that when he met with a physician he complained of "having pain around [his] liver areas," and that he was prescribed pain medication. (*See id.* at 6.)

Plaintiff argues that Williams' denial of his grievance violated Plaintiff's right to medical care and constitutes cruel and unusual punishment, and that as a result of the denial of treatment he "ha[s] been enduring se[vere] emotional and physical pain . . . ." (*Id.* at 5.) According to Plaintiff, Defendant Williams is aware that failing to treat Plaintiff's Hepatitis C increases his risk of "advance liver damage" as well. (*Id.* at 5.) Plaintiff also asserts that Defendant Williams' denial of treatment to Plaintiff constitutes "discrim[i]nation and not providing [him] the equal protection of law." (*Id.*) Plaintiff seeks compensatory and punitive damages, as well as injunctive relief. (*Id.* at 8.)

## II.   Procedural History

Plaintiff filed this action on December 10, 2018, alleging that numerous Defendants including Williams violated his right to medical care and to be free "from cruel and unusual punishment" by denying him care for Hepatitis C while he was a pretrial detainee. (*See* ECF No. 1, at 3-6.) The Court subsequently granted Plaintiff's motion to proceed in forma pauperis, screened Plaintiff's Complaint pursuant to 28 U.S.C. Sections 1915(e)(2) and 1915A, and ordered the U.S. Marshal to serve the Complaint on the named Defendants. (*See* ECF No. 7, at 9.) After Defendant Williams, together with three others, Gwathney,

Nolte, and Samuels, moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), (*see* ECF No. 22), Plaintiff filed a First Amended Complaint, (ECF No. 25), pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). The First Amended Complaint largely mirrored Plaintiff's initial Complaint, but added allegations against additional Defendants, Ghayour and Noonan, who allegedly failed to provide Plaintiff with adequate medical care, and the Doe Defendants, who were alleged to have participated in denying Plaintiff's administrative appeals. (*See* ECF No. 25, at 10-13.)

Defendants Gwathney, Nolte, Samuels, Williams moved to dismiss Plaintiff's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* ECF No. 30.) In an order granting in part and denying in part Defendants' motion to dismiss, the Court: (1) dismissed the claims against Gwathney and Nolte on the grounds that they are immune from liability pursuant to the Public Health Service Act ("PHSA"), 42 U.S.C. Section 233; (2) dismissed a First Amendment retaliation claim against Williams on the grounds that it would require an extension of *Bivens* contrary to the Supreme Court's decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017); (3) dismissed a deliberate indifference claim against Williams for failing to allege plausibly that Williams was aware of Plaintiff's medical condition or how Williams allegedly violated Plaintiff's constitutional rights; and (4) dismissed medical care claims against Samuels on qualified immunity grounds. (*See* ECF No. 30, at 4-13.) In addition to dismissing the aforementioned claims on Defendants' motion, pursuant to 28 U.S.C. Section 1915(e)(2), the Court dismissed sua sponte Plaintiff's claims against two additional Defendants, Ghayour and Noonan, who were employed by a private entity and thus were not subject to liability under *Bivens*. (*See id.* at 14.) Finally, noting that "[a] review of the Court's docket indicates that Plaintiff has failed to properly serve Defendants John Doe, Appeals Coordinator and John Doe, Administrative Appeal Specialist," the Court ordered Plaintiff to show cause why the claims against the Doe Defendants should not be dismissed for failure to prosecute pursuant to Federal Rule of Civil Procedure 4(m). (*Id.* at 15.) The Court granted Plaintiff leave to amend "as to his claims of deliberate indifference to serious medical need as to Defendant

Williams only," and denied leave to amend as to the remaining dismissed Defendants. (*See id.* at 16.)

On October 30, 2019, Plaintiff filed his Second Amended Complaint, amending his allegations that Defendant Williams violated Plaintiff's "right to medical care, Due Process, and Freedom from Cruel and Unusual Punishment (sic)." (SAC at 4.) Although the Second Amended Complaint does not reprise the allegations from the First Amended Complaint against the Doe Defendants, Plaintiff attached several documents to the Second Amended Complaint apparently in response to the Court's order to show cause. (*See* SAC at 9-19, 28-34.) Among these documents are USM-285 forms dated August 16, 2019 for the individuals Plaintiff alleges are the Doe Defendants, J. Baltazar and Ian Connors. (*See id.* at 12-13.) Plaintiff argues that these forms show that both Doe Defendants were properly served. (*See* SAC at 30-31; *see also id.* at 12-13.)

Also attached to Plaintiff's Second Amended Complaint is a "S[e]cond Motion for Appointment of Counsel," (*see id.* at 26-27), and a "Declaration for Entry of Default" against the Doe Defendants. (*See id.* at 28-29.) In the latter submission, Plaintiff states that the Doe Defendants "were served by the United States Marshal . . . on [sic] July 2019," and argues that because "more than 60 days has elapsed since the date on which Defendant J. Baltazar [sic] the 'Regional Director' and Defendant Ian Connors 'National Inmates Appeals Administrator['] herein were served with summons and a copy of plaintiffs' [sic] complaint" and they "failed to answer or otherwise defend as to Plaintiffs' [sic] Complaint," default should be entered. (*See id.* at 28-29.)

## III.   Motion to Dismiss

### A.   Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."[1]

---

[1] Defendant Williams initially asserted that the availability of a *Bivens* remedy for the alleged conduct was an aspect of subject matter jurisdiction, and therefore that this portion of his motion should

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Bryan v. City of Carlsbad*, 207 F. Supp. 3d 1107, 1114 (S.D. Cal. Mar. 20, 2018).

Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a motion to dismiss," *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002), including the exhibits attached to it. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.) However, exhibits that contradict the claims in a complaint may fatally undermine the complaint's allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (a plaintiff can "plead himself out of a claim by including . . . details contrary to his claims.") (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) (courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."))); *see also Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (courts "may consider facts contained in documents attached to the complaint" to determining whether the complaint states a

---

be reviewed under the standards of review applicable to motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *See* Mot. at 2-3. In his Reply, however, Defendant Williams disclaims reliance on Rule 12(b)(1), instead arguing that "it would be more appropriate to dismiss the claim for failure to allege a cognizable claim pursuant to Fed. R. Civ. P. 12(b)(6)." *See* Reply at 3 n.6. This approach is consistent with that of the Ninth Circuit, which has affirmed district court decisions dismissing claims under Rule 12(b)(6) for seeking unwarranted extensions of *Bivens*. *See, e.g.*, *Schwarz v. Meinberg*, 761 F. App'x 732, 733-34 (9th Cir. 2019) (affirming orders granting a motion for summary judgment and a motion to dismiss pursuant to Rule 12(b)(6) on the grounds that plaintiff's claims sought to inappropriately extend *Bivens*). Although the Court agrees with Williams and follows the Ninth Circuit in applying Rule 12(b)(6) to Williams' entire motion, the Court also notes that dismissal is warranted regardless of whether Plaintiff's claims are analyzed under Rule 12(b)(1) or Rule 12(b)(6).

claim for relief).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1228-29 (9th Cir. 2017). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, which rise above the mere conceivability or possibility of unlawful conduct. *Iqbal*, 556 U.S. at 678-79; *Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. While a pleading "does not require 'detailed factual allegations,'" Rule 8 nevertheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Therefore, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and quotes omitted); *accord Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th Cir. 2012) (en banc). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

B.   <u>Analysis</u>

1.   *Bivens*

As the Court has previously explained, because Plaintiff seeks damages for alleged

civil rights violations by federal officials, his claims arise under the implied federal cause of action established by the Supreme Court in *Bivens*.  (*See* ECF No. 46, at 1.)  "In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, the Court broke new ground by holding that a person claiming to be a victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020) (internal parallel citations omitted).

Since *Bivens* was decided, the Supreme Court has "only expanded this 'implied cause of action' twice." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017).  First, in *Davis v. Passman*, 442 U.S. 228 (1979), the Court recognized a *Bivens* remedy in the context of a Fifth Amendment claim based on gender discrimination. *See Abbasi*, 137 S. Ct. at 1854. Second, in *Carlson v. Green*, 446 U.S. 14, 24-25 (1980), the Court expanded *Bivens* to Eighth Amendment inadequate medical care claims raised by a federal prisoner's decedents. *Abbasi*, 137 S. Ct. at 1854 (citing *Carlson*, 446 U.S. at 24-25 (concluding that "[a] federal official contemplating unconstitutional conduct [in the context of an Eighth Amendment] medical care [claim] . . . must be prepared to face the prospect of a *Bivens* action.")).

In *Ziglar v. Abbasi*, the Court made clear that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity."  137 S. Ct. at 1857 (citing *Iqbal,* 556 U.S. at 675); *see also Hernandez*, 140 S. Ct. at 742-43 ("We have stated that expansion of *Bivens* is 'a disfavored judicial activity,' and have gone so far as to observe that if 'the Court's three *Bivens* cases [had] been . . . decided today,' it is doubtful that we would have reached the same result . . . ." (quoting *Abbasi*, 137 S. Ct. at 1856-57) (internal citations and quotation marks omitted) (alterations in original)).  Accordingly, when asked to extend *Bivens*, courts must engage in a two-step inquiry.  *See Hernandez*, 140 S. Ct. at 743.  "We first inquire whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants.'"  *Id.* (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).  The term "new context" is broad, and refers to claims that are "'different in a meaningful way

from previous *Bivens* cases decided by [the Supreme] Court.'" *See id.* (quoting *Abbasi*, 137 S. Ct. at 1859). "A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of the other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Abbasi*, 137 S. Ct. at 1860. Second, if the claim arises in a new context, the Court must then ask whether there are "'special factors counseling hesitation'" in extending *Bivens* "'in the absence of affirmative action by Congress.'" *Id.* at 1857 (quoting *Carlson*, 446 U.S. at 18). In deciding whether "special factors exist, "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58.

Williams argues that Plaintiff's claims present a new *Bivens* context, and that special factors counsel against extending *Bivens* to cover Plaintiff's allegations. As outlined above, Plaintiff's claims stem from Williams' denial of Plaintiff's grievance seeking treatment for Hepatitis C while Plaintiff was a pre-trial detainee, which Plaintiff alleges deprived him of the rights to medical care and to be free from cruel and unusual punishment, due process, and equal protection. (*See* SAC at 4.) Specifically, Plaintiff alleges that after two doctors at the MCC informed him that "BOP does not approve Hepatitis C treatment for detainees in pre-trial status," he filed a grievance request that was reviewed and denied by Williams. (*See id.*) Plaintiff takes issue with Williams' ultimate decision, arguing that it resulted in him "endur[ing] severe pain for over one year," but also the reasoning Williams used, contending that certain factual assertions contained in Williams' written decision were incorrect. (*See id.* at 5-6.)

Because Plaintiff is a pre-trial detainee alleging that federal officials violated his rights to medical care and due process, and his right to be free from cruel and unusual

punishment, his claims arise under the Fifth, not the Eighth Amendment.  *See, e.g.*, *Kost v. Kozakiewicz*, 1 F.3d 176, 188 (3d Cir. 1993) (applying Fifth Amendment Due Process Clause to federal pretrial detainees' inadequate medical care claims); *see also Bell v. Wolfish*, 441 U.S. 520, 530, 535 (1979) (holding that the Fifth Amendment's Due Process Clause prohibits subjecting federal pretrial detainees to conditions of confinement that "amount to punishment").  As Williams acknowledges, of the cases in which the Supreme Court has previously extended *Bivens*, Plaintiff's claims most closely resemble those at issue in *Carlson*.  (*See* ECF No. 56, at 16.)

In *Carlson*, a prisoner alleged that prison officials "being fully apprised of the gross inadequacy of medical facilities and staff" at a federal correctional facility "and of the seriousness of [the prisoner's] chronic asthmatic condition, nonetheless kept him in that facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital."  446 U.S. at 17.  The Supreme Court concluded that this conduct supported a *Bivens* claim against the responsible officials under the Eighth Amendment. *See id.* at 17 & n.1.

In ruling on the motion to dismiss Plaintiff's First Amended Complaint, the Court held that Plaintiff's claims against BOP Director Samuels "for implementing the 'Hepatitis C treatment guidelines that all BOPs under [Samuels'] jurisdiction must [abide] by'" was sufficiently similar to the claims in *Carlson* that Plaintiff did not allege a "'new *Bivens* context.'"  (*See* ECF No. 46, at 7 ("Here, while the appropriate constitutional claim is one brought under the Fifth Amendment rather than the Eighth Amendment . . . the Court finds that a claim of deliberate indifference to a serious medical need through the denial of a treatment based on a policy while incarcerated or detained is sufficiently similar to the claims raised in *Carlson*.  Therefore, the Court does not find that Plaintiff's claim against Samuels alleges a 'new *Bivens* context.'" (quoting *Abassi*, 137 S. Ct. at 1864)).)  There are

10

important differences, however, between the claims at issue in this motion and those asserted by the prisoner in *Carlson* and by Plaintiff against BOP Director Samuels in the First Amended Complaint.

First, Williams' degree of involvement in the alleged denial of medical care is different from the officials in *Carlson* or Defendant Samuels.  Unlike Williams, the defendant prison officials in *Carlson* disregarded the advice of doctors, failed to provide competent medical care, and delayed the prisoner's transfer to a hospital.  *See Carlson*, 446 U.S. at 17 & n.1.  Likewise, Plaintiff alleged in the First Amended Complaint that BOP Director Samuels was "responsible for implementing the 'Hepatitis C treatment guidelines that all BOPs under his jurisdiction must [abide] by.'"  (ECF No. 46, at 6 (quoting First Am. Compl. at 9).)  Williams, however, is not alleged to have been directly involved in the decision to deny Plaintiff access to Hepatitis C treatment while in pre-trial status, nor did he implement a BOP-wide policy of denying such treatment to pre-trial detainees.  (*See* SAC at 4-5.)  Rather, Williams, a non-medical official, allegedly followed existing BOP policy and the decisions of medical professionals like Drs. Gwathney and Nolte—decisions that Plaintiff does not allege were medically unreasonable.  *See Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (noting that "non-medical officials are entitled to defer to the professional judgment of the facility's medical officials" while rejecting allegations of deliberate indifference against non-medical officials who reviewed plaintiff's administrative grievances); *cf. Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) ("[A] mere 'difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference" (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996))).  Second, and relatedly, Plaintiff's claims arise not from Williams directly denying medical care to Plaintiff, but from Williams' denials of Plaintiff's grievance—a factor that further distinguishes Plaintiff's claim from the claim at issue in *Carlson*.  *See Cunningham v. Milusnic*, No. 5:19-cv-01244-JFW (AFM), 2019 WL 6435130, at *3 (C.D. Cal. Oct. 9, 2019) (concluding that Fifth Amendment Due Process Clause claims for, among other things, failing to respond to grievances or address prisoner complaints, were "unlike any

11

that the Supreme Court has recognized in previous *Bivens* cases . . . ."); *cf. Martinez v. U.S. Bureau of Prisons*, No. 5:15-cv-02160-TJH (AFM), 2019 WL 5432052, at *8-9 (C.D. Cal. Aug. 20, 2019) (concluding that a claim for failure to treat a prisoner's hypertension presented a new *Bivens* context because "the alleged deprivation is demonstrably different in kind and severity from that of *Carlson*" and due to the availability of administrative remedies").   Finally, despite Plaintiff's efforts to recharacterize Williams' actions as "discrimination" that "do[es] not have anything to do with Warden Williams" denying his grievance, (*see* ECF No. 58, at 10), such equal protection claims are even further afield from the Supreme Court's prior *Bivens* cases.   *See Van Gessel v. Moore*, No. 1:18-cv-01478-DAD-GSA-PC, 2020 WL 905216, at *14-15 (E.D. Cal. Feb. 25, 2020) ("Plaintiff's equal protection claim bears little resemblance to the claim for gender discrimination in employment recognized under the equal protection component of the Fifth Amendment's Due Process Clause in *Davis* . . . ." (citation omitted)).

   As the Supreme Court has explained, even if a case has "significant parallels" to previous *Bivens* cases and would result in only a "modest extension" of *Bivens*, it nevertheless arises in a new context.  *See Abbasi*, 137 S. Ct. at 1864.  Thus, the Court finds that the first prong of *Abbasi* is satisfied, and that Plaintiff's claims arise in a new *Bivens* context.   Accordingly, the Court must analyze whether there are "'special factors counseling hesitation'" against extending *Bivens* "'in the absence of affirmative action by Congress.'"  *Id.* at 1857 (quoting *Carlson*, 446 U.S. at 18).

   In deciding whether "special factors exist, "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  *Id.* at 1857-58.  As the Ninth Circuit has observed, the presence of an "alternative remedial structure limits [courts'] authority to infer a new *Bivens* cause of action."  *Luis Buenrostro v. Fajardo*, 770 F. App'x 807, 808 (9th Cir. 2019).  In *Luis Buenrostro*, the Ninth Circuit found that "an alternative remedial structure [to *Bivens*] exists, including through the Bureau of Prisons administrative grievance process."  770 F. App'x at 808.  If, as the Ninth Circuit has

concluded, the administrative grievance process is an alternative remedial structure limiting the ability of Courts to infer a *Bivens* cause of action, then it would be puzzling if Plaintiff, dissatisfied with the results of that alternative process, could now bring a *Bivens* claim based on the grievance process. *Cf. Vega v. United States*, 881 F.3d 1146, 1155 (9th Cir. 2018) ("[N]o court has held that the plaintiff's lack of success . . . while pursuing alternative remedies provides a basis for *Bivens* relief."); *Larkin v. Watts*, 300 F. App'x 501, 502 (9th Cir. Nov. 12, 2008) (improperly processing administrative grievances "does not give rise to a cognizable constitutional or *Bivens* claim").  Additionally, even if a damages remedy is unavailable, Plaintiff and other prisoners who believe their rights are being violated by prison officials or BOP policies still may bring claims for declaratory or injunctive relief outside of *Bivens*.  *See* 18 U.S.C. § 3626; *Malesko*, 534 U.S. at 74 ("[U]nlike the *Bivens* remedy, which [has] never [been] considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally.").  Thus, Plaintiff's assertions that "*Bivens* is the only [l]aw I can use to challenge my claim," are incorrect.  (ECF No. 58, at 6.)

Because "any alternative, existing process for protecting the [Plaintiff's] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages," the Court concludes that special factors counsel against extending a *Bivens* remedy to Plaintiff's claims.  *See Wilkie v. Robins*, 551 U.S. 537, 550 (2007).  Accordingly, Williams' motion to dismiss is GRANTED.

## 2. Failure to State a Claim

Even assuming that Plaintiff's allegations do not seek an improper extension of *Bivens*, Plaintiff nevertheless fails to state a cognizable claim.

"In the limited settings where *Bivens* does apply, the implied cause of action is the 'federal analog to suits brought against state officials under Rev. Stat. § 1979, 42 U.S.C. § 1983.'" *Iqbal*, 556 U.S. at 675-76 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006)).  Plaintiffs who seek to challenge the sufficiency of medical treatment provided

while in pretrial detention pursuant to 42 U.S.C. Section 1983 must allege facts sufficient to show that:

> (i) [each] defendant made an intentional decision with respect to the conditions under which [he] was confined; (ii) those conditions put [him] at substantial risk of suffering serious harm; (iii) [each] defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, [each] defendant caused [his] injuries.

*Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018); *see also Bell*, 441 U.S. at 535 (holding that when considering the conditions of pretrial detention, courts consider whether the conditions amount to punishment); *cf. Toguchi*, 391 F.3d at 1057 (prison officials act with deliberate indifference under the Eighth Amendment only if they know of and disregard an excessive risk to the prisoner's health); *see also Blankenship v. Shinn*, 696 F. App'x 237-38 (9th Cir. 2017) (affirming dismissal of federal pretrial detainee's inadequate medical care claims pursuant *Bivens* because, "under any potentially applicable standard, [plaintiff] failed to allege facts sufficient to show that [defendant] knew of or disregarded an excessive risk to [plaintiff's] back problem.").

In dismissing Plaintiff's claims against Defendant Williams in the First Amended Complaint, the Court noted that "[w]hile Plaintiff contends that Williams denied his administrative grievance seeking medical treatment, he offers no other factual allegations regarding Williams.  Plaintiff does not allege that Williams had any specific factual knowledge regarding his medical condition.  Moreover, Plaintiff fails to explain how Williams violated his constitutional rights through his 'own misconduct.'"  (ECF No. 46, at 11 (citing *Iqbal*, 556 U.S. at 677).)  In the Second Amended Complaint, Plaintiff alleges that "William[s] is a non-medical official making medical treatment conditions from that being said William[s] have to have knowledge of the risk of advance liver damage I face at presents and in the future . . . ."  (SAC at 5 (errors in original).)  Elsewhere, Plaintiff alleges that Williams misstated the contents of various medical records he reviewed in deciding Plaintiff's administrative grievance, and that "since Warden William[s] is allowed

to make medical decisions, have had to are [sic] should by me not[] receiving treatment it puts my illness to be in jeopardy of advance liver damage now and in the future." (*Id.* at 6 (errors in original).)

These allegations fail to state a claim against Williams because "the mere participation of a prison official in plaintiff's administrative appeal process does not give rise to a federal civil rights claim against such defendant." *Cunningham*, 2019 WL 6435130; *see also Lee v. Matevousian*, No. 1:18-cv-00169-GSA-PC, 2018 WL 5603593, at *5 (E.D. Cal. Oct. 26, 2018) ("[A] prisoner cannot state a due process claim based on the handling of his grievances."). This is because, as the Ninth Circuit has explained, "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *see also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."). The Ninth Circuit has made clear that this rule applies equally to claims brought pursuant to 42 U.S.C. Section 1983 and *Bivens*. *See Larkin*, 300 F. App'x at 501 ("Larkins' claim that the defendants improperly processed his administrative complaints or grievances does not give rise to a cognizable constitutional or *Bivens* claim" (citing *Ramirez*, 334 F.3d at 860)); *see also Fisher v. United States*, No. CV 14-6499-MMM (RNB), 2015 WL 5723638, at *9 (C.D. Cal. June 18, 2015) ("[T]o the extent that plaintiff's claim(s) against Warden Fox and/or Director Castillo are based on their role in the denial of plaintiff's administrative appeals, plaintiff's allegations are insufficient to state a *Bivens* claim against those defendants because the Ninth Circuit has held that a prisoner has no constitutional right to an effective grievance or appeal procedure." (citations omitted)).

This rule bars Plaintiff's claims even though the Second Amended Complaint repeatedly characterizes Defendant Williams as "mak[ing] medical decisions" or "making medical treatment conditions." (*See* SAC at 5-6.) As the Second Amended Complaint makes clear, Williams only became involved in Plaintiff's requests for treatment "[a]fter [Plaintiff] had been informed by Dr. Gwathney and Dr. Nolte that [Plaintiff] w[ould] not

be treated at Metropolit[a]n Correctional Center [because] BOP does not approve Hepatitis C treatment for detainees in pre-trial status . . . ."   (SAC at 4; *see also* ECF No. 58, at 3 (Plaintiff's opposition to Williams' motion, explaining that Williams became involved only after the "Cheif [sic] Medical Officer," and Dr. Gwathney told Plaintiff that he "would not be treated due to [his] pre-trial custody status.").)   And other than the conclusory statements about Williams making "medical decisions," the only involvement Williams is alleged to have had with Plaintiff is reviewing and denying his grievance.[2]  (*See id.* at 4-6.)   As other courts have held, only individuals who cause or participate in civil rights violations can be held liable, and "[r]uling against a prison on an administrative complaint does not cause or contribute to the violation."  *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").   Accordingly, Plaintiff's statements about Williams making "medical decisions" are simply "unadorned, the defendant-unlawfully-harmed-me accusations" that are insufficient to plead a plausible claim for relief.  *Iqbal*, 556 U.S. at 678.

Finally, although Plaintiff repeatedly describes Williams' actions as constituting "discrimination," he also fails to state an equal protection claim.  (*See, e.g.*, SAC at 5; ECF No. 58, at 6.)  The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburn v. Cleburn Living Ctr.*, 473 U.S. 432, 439 (1985).  Plaintiff does not allege any facts suggesting that he was treated differently from others similarly situated based on

---

[2] Plaintiff's opposition brief does state that "[i]t['] s not that Warden Williams denied [his] grievance request, however; he used Administration power to deny [him] Hepatitis C Medical Treatment," however Plaintiff does not allege any facts concerning the use of "Administration power" in the Second Amended Complaint or explain how, if at all, Williams denied him treatment except indirectly through denying Plaintiff's grievance.  (*See* ECF No. 58, at 6.)

16

his membership in a protected class, nor does he allege a classification that implicates fundamental rights. *See Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). As a result, Plaintiff's only remaining avenue is a "class of one" equal protection claim. *See N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) ("When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim."). "In order to claim a violation of equal protection in a class of one case, the plaintiff must establish that the [defendant] intentionally, and without rational basis, treated the plaintiff differently from others similarly situated." *Id.*; *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Equal protection rights are violated when (1) a person is a member of an identifiable class; (2) that person is intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment.").

Plaintiff has not alleged any of the necessary elements of a claim for denial of equal protection. Plaintiff has not alleged that he was "intentionally treated differently from others similarly situated." *See Vill. of Willowbrook*, 528 U.S. at 564. Plaintiff's merely alleges that Williams "discriminated" against him in some unspecified manner, or at best, that he was intentionally treated differently from individuals who were not in pretrial detention. (*See* SAC at 5 ("William[s'] denial can also be noted in the discrimination and not providing me the equal protection of law.").) These conclusory allegations are insufficient. *See, e.g.*, *George v. Uribe*, No. 11-CV-70 JLS (RBB), 2012 WL 993243, at *6 (S.D. Cal. Mar. 23, 2012) (concluding that allegations that defendants "intentionally treated Plaintiff differently from others" who participated in a prison riot was insufficient without supporting facts). Additionally, Plaintiff fails to allege any facts from which the Court could conclude that Williams' actions were irrational or lacked a legitimate penological interest. *See Barbarin v. Dep't of Corrs. & Rehab.*, No. 3:19-cv-1714-JAH-RBB, 2019 WL 5454435, at *4 (S.D. Cal. Oct. 24, 2019) (plaintiff "fail[ed] to allege any facts from which the Court could conclude that [defendants'] policy . . . lacks a rational or penological interest.").

Accordingly, Defendant Williams' Motion to Dismiss the claims against him for failing to state a claim is GRANTED.[3]

### C. Leave to Amend

Because Plaintiff has already had the opportunity to amend in response to both Defendants' first motion to dismiss, and the Court's order on Defendants' second motion to dismiss to no avail, and given the application of the Supreme Court's decision in *Abbasi* to Plaintiff's claims against Defendant Williams as outlined above, the Court finds that granting further leave to amend would be futile.  *See Gonzalez v. Planned Parenthood*, 759 F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of . . . leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." (internal quotation marks omitted) (second alteration in original)). The Court also finds that granting leave to amend with respect to the Doe Defendants, against whom Plaintiff has not alleged any claims in the Second Amended Complaint, would be futile since they, like Williams, are allegedly to have violated Plaintiff's rights solely through their denials of his administrative appeals.

## IV.    Plaintiff's Request for Entry of Default

In its order on Defendants' prior motion to dismiss the Court noted that "the . . . docket indicates that Plaintiff has failed to properly serve Defendants John Doe, Appeals Coordinator and John Doe, Administrative Appeal Specialist," and ordered Plaintiff to show cause why his claims against these Defendants should not be dismissed

---

[3] Because the Court has found that Defendant Williams is entitled to dismissal as to all of Plaintiff's claims, it need not reach any issues regarding qualified immunity.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

for failure to prosecute pursuant to Federal Rule of Civil Procedure 4(m).  (*See* ECF No. 46, at 15.)  Plaintiff subsequently filed his Second Amended Complaint, attaching a "Declaration In Support of Proper Served [sic] Amended Complaint on the two Doe Defendants" and completed USM-285 forms for the individuals, J. Baltazar and Ian Connors, dated August 16, 2019 that he argues show that both were properly served.  (*See* SAC at 30-31; *see also id.* at 12-13.) Also attached to Plaintiff's Second Amended Complaint is a "Declaration for Entry of Default" against the Doe Defendants.  (*See id.* at 28-29.)   In it, Plaintiff states that the Doe Defendants "were served by the United States Marshal . . . on [sic] July 2019," and argues that because "more than 60 days has elapsed since the date on which Defendant J. Baltazar [sic] the 'Regional Director' and Defendant Ian Connors 'National Inmates Appeals Administrator['] herein were served with summons and a copy of plaintiffs' [sic] complaint" and they "failed to answer or otherwise defend as to Plaintiffs' [sic] Complaint," default should be entered.  (*See id.* at 28-29.)  The Court construes this document as a request for entry of default against the Doe Defendants.

Contrary to Plaintiff's characterization, the Doe Defendants were not served in July 2019.  Although the Marshal's Service first mailed the request for waiver of service to Defendant Baltazar on August 30, 2019, service was not (and could not be) effected merely by mailing that form.  *See* Fed. R. Civ. P. 4(d)-(e) (specifying rules of waiver of service of process, which may be accomplished by mail, and service of process, which is required in the absence of a waiver and may not ordinarily be effected by mail).  A notation on the form states that on October 28, 2019, "per legal [Baltazar] no longer employed there will forward to US Armed Forces."  (*See* ECF No. 49, at 1.)  Another request for waiver of service was sent that day, evidently to a more current address.  (*Id.* at 2.)  On November 14, 2019, Baltazar signed and returned that waiver form, which stated that "I [Baltazar] understand that a judgment may be entered against me . . . if an answer or motion under Rule 12 is not served . . . within 60 days after October 28, 2019," but by the time he agreed to waive service no answer or motion was required from him because Plaintiff's operative complaint was the Second Amended Complaint, which contains no claims against him.

*See Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("[A]n amended complaint supersedes the original, the latter being treated thereafter as non-existent.").  As a result, Plaintiff's "Declaration for Entry of Default" against Defendant Baltazar is **DENIED** as moot.

Although the facts are somewhat different with respect to Defendant Connors, the result is the same.  According to a proof of service form, Defendant Connors was personally served with the summons and complaint on October 2, 2019.  (*See* ECF No. 54, at 2; *but see* ECF No. 56, at 2 n.6 (Government's brief asserting without explanation that "Mr. Connors has not yet been served.").)  Assuming that Defendant Connors was served with the summons and complaint on that date, he had 21 days to file an answer or responsive motion.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i).  Defendant Connors did not, however, file a responsive pleading or motion on or before October 23, 2019.  (*See* ECF No. 56, at 2 n.6 (noting that the Assistant United States Attorney representing Defendant Williams "recently received permission to represent . . . Mr. Connors in [his] individual capacit[y]," and arguing that because "the SAC does not allege any claims against [him] . . . , there is nothing for [him] . . . to respond to.").)  Even if these actions constituted a default at the time, however, Plaintiff's decision to file a Second Amended Complaint shortly after October 23, 2019 omitting any claims against Defendant Connors rendered any request for entry of default against Defendant Connors moot.  *See, e.g., ThermoLife Int'l, LLC v. Sechel Holdings, Inc.*, No. CV 14-2291-PHX-JAT, 2015 WL 1521779, at *1 (D. Ariz. Apr. 3, 2015) (concluding that filing an amended complaint renders "a default based on the original complaint . . . ineffectual and non-existent" and thus denying a motion for default judgment as moot); *see also Ogunsalu v. Nair*, 264 F. App'x 672, 674 (9th Cir. 2008) (affirming denial of motion for entry of default judgment where plaintiff's subsequent filings superseded the original complaint).  Accordingly, Plaintiff's "Declaration for Entry of Default" against Defendant Connors is **DENIED** as moot as well.

///

///

## V.    Second Motion for Appointment of Counsel

Because the Court dismisses Plaintiff's Second Amended Complaint without further leave to amend, Plaintiff's motion for appointment of counsel, (*See* SAC at 26-27), is moot, and is therefore **DENIED**.

## VI.   Conclusion and Orders

Accordingly, the Court:

(1)   **GRANTS** Defendant Williams' Motion to Dismiss Plaintiff's claims (ECF No. 56);

(2)   **DENIES** as moot Plaintiff's Request for Entry of Default against the Doe Defendants (SAC at 28-29);

(3)   **DENIES** as moot Plaintiff's Second Motion for Appointment of Counsel (SAC at 26-27); and

(4)   **DENIES** further leave to amend as futile.  *See Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 279 F.3d 817, 824 (9th Cir. 2002) (recognizing that "[f]utility of amendment" is a proper basis for dismissal without leave to amend).

The Clerk shall enter judgment accordingly and close the file.

**IT IS SO ORDERED**.

Dated:  April 20, 2020

Hon. William Q. Hayes
United States District Court